D. C. Andrews & Co. *v.* United States (No. 4351)[1]

United States Court of Customs and Patent Appeals, November 3, 1941

*Henry L. Ziegel* for appellant.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

[Oral argument October 9, 1941, by Mr. Ziegel and Mr. Lawrence.]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, dismissing appellant's protest against the exaction by the collector at the port of Boston, Mass., of certain duties on imported "Linen Gilling Twine."

In its decision, the trial court, in an opinion by Kincheloe, Judge, Tilson, Judge, dissenting, held that the proper dutiable value of the imported merchandise was the only issue attempted to be raised by the importer's protest, and that that issue could only be raised by an appeal for reappraisement in accordance with the provisions of section 501 of the Tariff Act of 1930.

It appears from the record that the involved merchandise, which consists of "No. 3 Linen Gilling Twine S. G." and "No. 3 Linen Gilling Twine Green," was erroneously described on the original consular invoice as "No. 1 Linen Gilling Twine S. G." and "No. 1 Linen Gilling Twine Green," and, as so described, was entered for consumption by the importer (appellant); that, subsequent to the importation and entry of the involved merchandise, the manufacturer and exporter discovered the error and, in order to rectify it, submitted a corrected consular invoice properly describing the merchandise and stating its values, which values were less than the values of the merchandise described on the original consular invoice and the importer's consumption entry.

The corrected consular invoice, dated November 13, 1936, was mailed by the American Consul General of Belfast, Northern Ireland, to the Collector of Customs at the port of Boston, Mass., on November 18, 1936. In the Consul General's letter of transmittal it is stated:

There is enclosed herewith the triplicate copy of invoice No. 6230, certified November 13, 1936, and replacing invoice No. 5886, certified October 30, 1936; both documents covering a shipment of linen gilling twine, from The Ulster Spinning Co., Ltd., Belfast, Northern Ireland, to Ashaway Line & Twine Mfg., Co., Ashaway, R. I.

This "replace" invoice was issued at the request of the exporters who stated that in the original invoice set the goods were wrongly ticketed. The tickets should have been No. 3 quality, at the price of 59d for S. G. and 65d for Green, instead of No 1 quality at 90d for S. G. and 96d for Green.

It further appears from the record that on November 30, 1936, the corrected consular invoice and the Consul General's letter of transmittal were forwarded by the collector at the port of Boston to the appraiser at that port. The collector's note of transmittal to the appraiser, bearing an illegible signature, reads as follows: "To the Appraiser: Attached triplicate invoice and letter are inclosed for your information. Please return the same after they have served their purpose." Stamped on the collector's note of transmittal is the following notation: "Office of U. S. Appraiser, Received Nov. 30, 1936, Boston, Mass."

It appears from the "SUMMARY OF ENTERED VALUE, EXAMINATION, AND APPRAISEMENT" that the merchandise described on the original consular invoice and the importer's consumption entry came under the observation of the appraiser and was appraised at its entered values on November 18, 1936. Thereafter, on March 16, 1937, the collector liquidated the entry and assessed the merchandise with duty at 35 per centum ad valorem under paragraph 1004 of the Tariff Act of 1930 in accordance with the entered and appraised values.

On March 18, 1937, the importer filed a protest against the collector's liquidation, wherein it was stated, *inter alia:*

This shipment was entered in accordance with the description and prices shown on Belfast Ireland Consular Invoice #5886 dated October 30, 1936. This invoice described the contents as No. 1 Linen Gilling Twine and the price was based on that type of twine, which figured £953–9–0 for the entered value.

Information has been received since the above mentioned entry was filed, that the shippers erroneously described this shipment as No. 1, and it actually consists of No. 3 Linen Gilling Twine which is a lower priced twine. Corrected Consular Invoice No. 6230, dated at Belfast on November 13, 1936 has been received from the shipper, to substantiate the error, and by using the figures shown on this corrected invoice the entered value would figure £631–11–4.

We therefore protest the assessment of duty based on the original entered value of £953–9–0, as the twine entered under this entry was not of the No. 1 quality as invoiced, but was of the No. 3 quality as invoiced on the corrected invoice No. 6230 dated at Belfast on November 13, 1936.

In the appraiser's answer to the protest, dated May 1, 1937, appears, among other things, the following:

> Invoice Nos. Belfast 5886. Belfast 6230 (replace).
> Entry No. 6601/1.
> Date: 11–10–36.

The merchandise subject of protest consists of linen yarn. The importer claims that instead of quality No. 1 as invoiced, quality No. 3 was received. *Numerous and careful tests as to tensile strength of both qualities have been made indicating that the importer's claim is correct.* Values of No. 3 are as follows: S. G. 59d per pound; green 65d per pound.

No samples retained. [Italics not quoted.]

On the trial below, C. J. Ladau, called as a witness for the importer, stated that he was a former examiner of merchandise at the port of Boston; that he had received "a corrected or replace invoice from the collector in connection with" his re-examination of the involved merchandise; that he determined from such re-examination that the involved merchandise was *incorrectly* described on the *original consular invoice and the importer's consumption entry*, but *was correctly described* on the *corrected consular invoice* as "No. 3 Linen Gilling Twine S. G." and "No. 3 Linen Gilling Twine Green"; that the value of the No. 3 S. G. type was 59 pence per pound, and the value of the No. 3 green type was 65 pence per pound; that, as it was the customary thing to do, he presumed that he had reported his findings to the collector; and that he had told the witness Ransom Woodall, who was employed by, or was in some way connected with, D. C. Andrews & Co., customs brokers, (appellant), that he had made a report to the collector calling attention to the facts hereinbefore stated and that "everything would be all right."

Patrick J. Rooney, called as a witness by the importer, testified that he was a liquidator in the collector's office at the port of Boston; that he liquidated the involved entry; that at the time of such liquidation he did not have before him the corrected consular invoice nor any report of the appraiser regarding the facts hereinbefore set forth; that if he had had such documents before him at the time of liquidation he "would have referred all the papers to the entry division for a new entry"; and that upon the presentation of a new entry, properly describing the merchandise and its values, the involved entry would have been canceled and the estimated duties paid thereon refunded in accordance with article 826 of the Customs Regulations, 1931.

Article 826, so far as pertinent, reads:

Art. 826. Articles in examination packages not specified in the invoice.—(*a*) Tariff act of 1930, section 499:

    \*        \*        \*        \*        \*        \*        \*

(*b*) When any article not corresponding with the description given in the invoice is found by the appraiser, duties will be assessed on the goods actually found, and, if the discrepancy appears conclusively to be the result of a mistake

and not of an intent to defraud, no proceedings for forfeiture will be taken: *Provided,* That when the entire shipment does not agree with the invoice a new entry should be required and the estimated duty paid on the original entry refunded on liquidation as in the case of a nonimportation.

In the event an importer is dissatisfied with the appraised value of imported merchandise, its remedy is not by protest under the provisions of section 514 of the Tariff Act of 1930, but rather, as held by the trial court, by appeal for reappraisement under the provisions of section 501, *supra.*

In view of the fact that in the instant case the entered and appraised values of the merchandise described on the original consular invoice and the consumption entry were the same, and as collectors of customs are required by the provisions of section 503 of the Tariff Act of 1930 to assess ad valorem rates of duty on imported merchandise in accordance with the entered or final appraised value, whichever is higher, an appeal for reappraisement would have been a futility.

It is apparent from the record that the merchandise which was described on the original consular invoice and upon which duties were assessed by the collector was not the merchandise actually imported; that both the collector and the appraiser were apprised of that fact; and that the only reason a new entry covering the merchandise actually imported was not required by the collector and duties were not assessed upon such merchandise in accordance with article 826, *supra,* was because the liquidator in the collector's office did not, at the time of his liquidation, have before him the "replace" or "corrected" consular invoice and the report of the appraiser stating that the merchandise actually imported was correctly described thereon. Why those documents were not before the liquidator, is not explained in the record.

Counsel who prepared the brief for the Government were apparently of the opinion that it was the duty of the importer either to have amended its entry in accordance with the provisions of section 487 of the Tariff Act of 1930 or to have filed a new entry in accordance with article 826, *supra,* and that having failed to do either, the importer is not entitled to relief in this court.

Section 487 reads:

SEC. 487. VALUE IN ENTRY—AMENDMENT.

The consignee or his agent may, under such regulations as the Secretary of the Treasury may prescribe, at the time entry is made, or at any time before the invoice or the merchandise has come under the observation of the appraiser for the purpose of appraisement, make in the entry such additions to or deductions from the cost or value given in the invoice as, in his opinion, may raise or lower the same to the value of such merchandise.

It is correctly stated in the brief of counsel for the Government that at the time the "replace" or "corrected" consular invoice was received by the collector—November 30, 1936—the involved mer-

chandise had not only come under the observation of the appraiser but had been appraised by him. It is apparent, therefore, that, at the time the "replace" or "corrected" invoice was received by the collector, the importer could not have amended its entry under section 487, *supra.*

Article 826, *supra*, directs collectors of customs, under facts and circumstances such as are here involved, to require the filing of a new entry and, upon liquidation thereof, to refund duties "paid on the original entry." There is no statutory or regulatory provision which requires or permits the importer under such facts and circumstances to file a new entry until the mandates of article 826 have been complied with by the proper customs officials. We are of opinion, therefore, that the protest section—section 514 of the Tariff Act of 1930—affords the importer the right to protest against the collector's liquidation of the involved entry. Accordingly, the question presented is whether the importer's protest is sufficiently specific and definite to have called the collector's attention to the pertinent facts and circumstances so that he might have had an opportunity to consider them, review his decision, and take such action as he deemed proper. See *Kilburn Mill* v. *United States*, 26 C. C. P. A. (Customs) 54, T. D. 49598.

Section 514 of the Tariff Act of 1930 reads:

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

It clearly appears from the importer's protest that the involved merchandise was "entered in accordance with the description and prices shown on" the original consular invoice 5886, dated October

30, 1936; that that invoice erroneously described the involved merchandise as No. 1 Linen Gilling Twine, and states the value to be £953 9s. 0d.; that the merchandise actually imported was No. 3 Linen Gilling Twine and of less value; that the merchandise actually imported was correctly described on the "replace" or "corrected" consular invoice No. 6230, dated November 13, 1936, and the value stated to be £631 11s. 4d. It will be recalled that the "replace" or "corrected" consular invoice was received by the collector at the port of Boston and by the appraiser at that port on November 30, 1936.

It is clear from the protest that the importer was objecting to the amount of duties assessed by the collector; that sufficient facts were stated in the protest to inform the collector that the merchandise actually imported was not the merchandise covered by the original consular invoice and entry; and that the merchandise actually imported was correctly described on the "replace" or "corrected" consular invoice. Furthermore, it is apparent from the appraiser's report in answer to the protest, hereinbefore set forth, that the "replace" or "corrected" consular invoice—No. 6230—correctly described the imported merchandise, and that the claim made by the importer in its protest was correct.

With all of the pertinent facts plainly appearing not only from the protest, but also from the records which were, or should have been, in the office of the collector, we are unable to understand what further information was necessary to enable the collector to carry out the mandates of article 826, *supra*.

We are of opinion, therefore, that the trial court should have directed the collector to require the filing of a new entry and to otherwise proceed in accordance with the mandates of article 826, *supra*, and other applicable mandates of the law, and that to that extent the protest should have been sustained.

For the reasons stated, the judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.